## Kinnaird v. E. R. Spotswood & Son.

(Decided December 7, 1916.)

### Appeal from Adair Circuit Court.

1. Pleading—Sufficiency—Action for Damages for Breach of Contract.—In a suit for damages for breach of contract in failing to deliver lumber contracted for, a petition which set forth, in apt words, the contract between the parties, and alleged that the defendant had broken the contract by refusing to let the plaintiff's agent measure the lumber or to inspect it, or to let the plaintiff have the lumber which it had bought under the contract, and that the lumber had advanced in price since the sale, it stated a cause of action for general damages.

2. Pleading—Special Damages—Statement of Cause of Action.—Where, in a count for special damages for the breach of a contract for the sale of lumber, the petition averred that the plaintiff had contracted to sell the lumber in question at a high price to old and profitable customers, and that by reason of the defendant's breach of the contract and his refusal to deliver the lumber

according to his contract, the plaintiff had been unable to comply with its contract with its customers, or to purchase other lumber to fill said contract, and had thereby lost profitable customers, and had incurred liability on contracts with them for sales of lumber, it stated a case for special damages.

3. Pleading—Defects or Want of Declaration.—If the averments of a petition otherwise sufficient are not sufficiently specific to put the defendant upon notice of the plaintiff's claim, the defendant should ask that the petition be made more definite and specific, in those respects; otherwise it will be assumed he treated the allegations of the petition as being sufficiently specific to advise him of the claim of the plaintiff.

4. Trial—Instructions.—Instructions to a jury should submit only the issues made by the pleadings and supported by the proof.

MONTGOMERY & MONTGOMERY and J. W. KINNAIRD for appellant.

JONES & GARNETT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Affirming.

This action is the result of a dispute over the performance of a lumber contract made between the appellee and the appellant, on June 6th, 1912. By that contract J. H. Kinnaird sold to E. R. Spotswood & Son (incorporated), of Lexington, several hundred thousand feet of oak, poplar, ash and walnut lumber, then in appellant's lumber yard at Red Lick, in Metcalfe county, Kentucky, at prices ranging from $65.00 to $14.00 per thousand.

By the contract E. R. Spotswood & Son agreed to take up as much as one hundred thousand feet of lumber at a time and pay for it as soon as it was taken up, less two per cent cash, if paid when taken up; and it further agreed to take the first lot as soon as Kinnaird should get ready to have it delivered. Kinnaird also agreed to haul the lumber, by November 1st, 1912, for 75 cents per hundred, delivered at Greensburg.

On July 2nd, 1912, E. R. Spotswood & Son sent Kinnaird a check for $1,000.00, which he accepted as an advancement; and Kinnaird having notified E. R. Spotswood & Son that he was ready to deliver a part of the lumber, that company sent Roach to Red Lick on July 18th to inspect and take up the lumber. On that occasion A. J. Cummings represented Kinnaird as inspector; and, acting together, Roach and Cummings inspected

and took up 30,779 feet which, under the contract, were sold for $740.27. Roach lived at Campbellsville; and after the first inspection above referred to, he returned to Campbellsville, to wait for further orders.

On August 31st, Roach again went to Red Lick, where he and Bell and Cummings, who acted an inspectors for Kinnaird, made a second inspection, in which they took up 35,054 feet of lumber.

While the second inspection was in progress, Kinnaird went to the lumber yard and complained that Roach was robbing him, because the inspectors were not accepting "No. 3 common." After making this second inspection, Roach returned to Campbellsville, after agreeing with Cummings to return to Red Lick in thirty days. Both inspections were made according to the rules of the National Hardwood Lumber Association.

A few days thereafter, however, Kinnaird wrote a letter to Roach, saying he could not accept the last inspection, as it was not according to the contract, and that he, Kinnaird, was not going to let the lumber go to the railroad. Roach forwarded Kinnaird's letter to Spotswood & Son, who answered the letter, as follows:

"Sept. 9, 1912.

"Mr. J. H. Kinnaird,
      "Red Lick, Ky.

"Dear Sir:—

"A letter was received this morning from Tom Roach in which he states that he received a letter from you stating that you could not accept his last inspection, as it was not according to the contract, and that you were not going to let the lumber go to the railroad until you heard from him. Roach states that he does not know what you mean by that, as when he left your place you asked him when he was coming back. Roach states that the man representing you said he expected Roach to take No. 3 common. Will you please inform me, Mr. Kinnaird, what the trouble is? We are very anxious to get that lumber to the railroad, having sold the bulk of it; and, as I understand from Greensburg, all of the first batch taken up six weeks ago has not been hauled to the railroad yet. It is a long ways out there through the country to your lumber, and having employed some one at Greensburg to look after it and having rented a yard there to receive it, any little friction or additional

expense will well nigh eat up the profit on it. Will you please write us what the trouble is and when you are going to haul in the bunch Roach has recently taken up. Very often, owing to a man's personality, there is friction between lumber inspectors, and if Roach does not please you we can send back one of our other men to take up the balance of the lumber; and, if you will commence to put this lumber in rapidly to the railroad, we will send our Mr. Smith from Pulaski, or Mr. Pike from the Pine Knot, up and will take it up in 100,000 or 150,000 lots, provided you will haul it promptly; but there will be no occasion to take up such a large amount of lumber if you only haul a little bit, every now and then.

"Let me hear from you by next mail, please, and oblige.

"Yours very truly,
"E. R. Spotswood & Son, Inc.,
"By A. M. Spotswood, President."

Kinnaird paid no attention to the letter, whereupon A. M. Spotswood, in company with C. M. Herriford, went to Red Lick and had an interview with Kinnaird, at his lumber yard. In that interview Kinnaird said that Roach was not grading the lumber according to the contract; and, Spotswood says Kinnaird showed him a copy of the contract, which was not like the contract in Spotswood's possession, and that, according to Kinnaird's copy, Spotswood & Son were to take "No. 3 common." And, he claimed that Roach had refused to so execute the contract in making the inspection.

Spotswood further said that the contract exhibited to him by Kinnaird had been scratched. The original contract in the possession of Spotswood did not require him to take "No. 3 common," but it did require Spotswood to take certain "culls," therein specified.

According to Kinnaird's version of the interview, he claimed that the word "culls" as used in the contract, meant the same as "No. 3 common," and that he had never claimed that it meant anything else; but, in this he is contradicted by Spotswood, Herriford and Roach, who testified that he had claimed that the contract, in terms, embraced "No. 3 common," as shown by his scratched copy.

Shortly thereafter, Spotswood wrote a letter to W. W. Jones, his attorney at Columbia, asking him to go and see Kinnaird for the purpose of getting him to carry

out the contract; and Jones did so, but failed to accomplish anything.

Spotswood also further said that at the time of the interview, above referred to, Kinnaird proposed that Spotswood should take "No. 1" and "No. 2," and "No. 1 common," at the contract price, and permit Kinnaird to retain the "No. 2 common," thus changing the contract in an important respect; but that Spotswood declined the offer, since it would eliminate the most profitable part of the contract, by requiring him to take "No. 3 common" in the place of, and at the same price as, "No. 2 common."

Spotswood further testified that he had contracted to sell the lumber to one of his customers, and by Kinnaird's failing to deliver it he had lost his customer, permanently, on account of his inability to get this lumber, or other lumber to fill the order. In his letter of Sept. 9th, Spotswood had told Kinnaird that he had therefore sold the bulk of the lumber and needed it to fill the order.

It further appears from the proof that about the middle of the summer of 1912 there was a decided rise in the price of lumber, and that during the season the prices of lumber had risen from five to ten dollars per thousand, according to character and quality.

Kinnaird persisted in his refusal to deliver the lumber, and nothing further was done under the contract. Kinnaird subsequently sold the lumber to Harvey for about $800.00 more than the price called for by the contract with E. R. Spotswood & Son.

E. R. Spotswood & Son thereupon filed this action, claiming, (1) $4,000.00 as general damages for breach of the contract; (2) $1,000.00 as special damages caused by plaintiff's inability to deliver the lumber to the customers to whom it had sold the lumber; and, (3) $250.00 balance due on account of the overpayment on July 2nd.

By way of defense, the answer alleged, (1) that the contract as verbally agreed upon, provided "that when the plaintiff measured or graded any part of said lumber, and the grading and measuring was not satisfactory to Kinnaird, he should so notify the plaintiff or its agent of his dissatisfaction, and thereupon the plaintiff should not receive or have any more of said lumber, and the said contract of sale and purchase would thereby become null and void, and of no further force or effect;"

and that by fraud or mistake that portion of the contract was omitted from the contract as written; (2) that the plaintiff had broken the contract by failing to measure and take up a hundred thousand feet of lumber within a reasonable time; and, (3) by way of counter-claim, Kinnaird claimed $1,000.00 for loss on the sale of the undelivered portion of his lumber to others, and the further sum of $500.00 for trouble and expenses in finding another purchaser for said lumber, and selling the same.

By an amended counter-claim, Kinnaird alleged that under the contract the plaintiff was to have a reduction of 70 cents on the gross price per hundred feet, to be paid as a haul bill for said lumber; that in addition to the 70 cents, the defendant was to receive the sum of five cents per hundred feet for his trouble in looking after the loading and ticketing out of said lumber, and that said amount of five cents per hundred was to be paid to Kinnaird by E. R. Spotswood & Son; and that Kinnaird's commission on the amount taken up on the 18th of July, 1912, and which the defendant had hauled to Greensburg, amounted to $15.38.

The amended counter-claim further alleged that in addition to the lumber taken up by the Spotswood company on July 18th, 1912, the defendant delivered to the plaintiff 2,609 feet of lumber, which, after deducting the haul bill, was worth the sum of $55.61 under the contract price, and that he was entitled to that sum, plus the five cents per hundred for loading and ticketing, amounting to $1.30. In this way Kinnaird increased his counter-claim to $1,572.29, for which he prayed judgment.

A demurrer was sustained to the amended counter-claim; but it was overruled to so much of the answer as set up the mistake or omission in the written contract.

By a second amended counter-claim, Kinnaird alleged he was entitled to receive 70 cents per hundred, or $18.26, for hauling the 2,609 feet of lumber mentioned in the amended answer and counter-claim. This pleading was controverted of record. These claims for loading and ticketing were properly rejected under the written contract, there being no allegation of mistake or omission, in this respect.

Upon the trial, there was a verdict and judgment for the plaintiff for $750.00, general and special damages, and $250.00, with interest, on account of the overpayment

of July 2nd. From that judgment Kinnaird prosecutes this appeal.

For a reversal appellant contends, (1) that the petition does not contain a statement of facts sufficient in law to entitle it to recover general damages for a breach of the contract, because it merely avers that plaintiff sent its agent on the .......... day of ....................., 1912, to take up the rest of the lumber, and that the defendant refused to let it be taken up or to deliver it; while, to state a cause of action, it is claimed the petition should aver that the agent was sent or directed to take up the lumber, according to the contract, and pay for it according to the contract, and that it offered to do so; (2) that the petition did not authorize a recovery of special damages, since it failed to allege with whom appellee had contracted to sell the lumber, and at what price it had so contracted; and, (3) that the court erred in giving and refusing instructions.

We see no merit in the criticisms of the petition. It sets up in apt words, the contract between the parties, and alleges that Kinnaird had broken the contract by refusing to let the appellee's agent measure the lumber or inspect it, or to let plaintiff have the lumber which it had bought under the contract; and, that the lumber had advanced in price from five to ten dollars per thousand, according to grade, after the contract was made.

So much of the petition as claims special damages, averred that the plaintiff had contracted to sell the lumber in question at a high price to old and profitable customers, and that by reason of Kinnaird's breaking the contract with the plaintiff and refusing to deliver the lumber sold under the contract, the plaintiff had been unable to comply with its contract with its customers, or to purchase other lumber to fill said contract, and had thereby not only lost profitable customers for said lumber, but had incurred liability on contracts with them for sales of lumber, to the special damage to the appellee in the sum of $1,000.00.

If these averments were not sufficiently specific to put the defendant upon notice of the plaintiff's claim, he should have asked that the petition be made more definite and specific, in those respects. But, as he failed to do this, it must be assumed he treated the allegations as sufficiently specific to advise him of the claim of the plaintiff.

Aside from the question of damages, the only issue made by the pleadings was whether any portion of the contract had been omitted from the writing. Kinnaird insisted that under the contract as made, but not written, if any part of the grading and measuring of the lumber was not satisfactory to him, he could annul the contract, and that this provision had been omitted from the contract, by mistake or fraud upon the part of appellee's agent. Indeed, Kinnaird based his right to refuse to deliver any more of the lumber upon this provision of the contract; and, if he failed to sustain his contention in this respect, he stood in the attitude of having broken the contract as it really existed between the parties. Whatever Kinnaird may have claimed in his conversations with Spotswood, Jones, Roach and other witnesses, his defense under the pleadings, is rested solely upon the ground that the contract, by its terms, permitted him to end it, at his pleasure. If the contract was correctly set forth in the writing, Kinnaird confessedly breached it.

So, when the court advised the jury, as it did by the first instruction, that they should find for the plaintiff unless they should believe from the evidence that it was agreed by and between plaintiff's agent and the defendant, and made part of the contract, that Kinnaird could, upon notice, annul the contract for dissatisfaction, and that if he did so notify the plaintiff they should find no damages whatever for the plaintiff, the court submitted to the jury the issue as to what the contract was.

The first instruction also limited the special damages to such sum, not exceeding $1,000.00, as the plaintiff had suffered by reason of its inability to fulfill its contracts with its customers by reason of the breach of the contract, if it had been breached, by Kinnaird.

By the second instruction the court directed the jury to give Kinnaird credit for the amount of lumber the plaintiff had received at Greensburg, and deduct that amount from the $1,000.00 advanced to Kinnaird in July, 1912; and, that the measure of the plaintiff's general damages, if any, was the sum equal to the difference between the contract price of the lumber and the market value of same at the time defendant refused to permit plaintiff to have the lumber; and it specifically excepted special damages, in that connection.

There was evidence showing that after Kinnaird's failure to let appellee have the lumber in question, he had sold the undelivered portion to Harvey for about $800.00 more than it would have brought under the contract with the appellee. Therefore, since the jury fixed appellee's damages, both general and special, under the first instruction, at $750.00, it is clear that it really confined itself to general damages, and that the appellant was not prejudiced by any uncertainty in the instruction relating to special damages.

The finding of $250.00 under the second instruction could not have been less, under the proof, since the advancement of $1,000.00 by the appellee to Kinnaird on July 2nd, 1912, and the further fact that the contract price of the 30,779 feet was $740.27, being undisputed, there remained due the appellee $259.73. Consequently, a finding of $250.00 for appellee upon this item was more favorable to the appellant than the proof warranted.

Instruction A asked by the appellant and refused by the court, asked the court to tell the jury that it was the duty of the appellee to inspect, measure, receive and pay for 100,000 feet of said lumber at a time, and within reasonable times, until the contract was fully performed. This instruction was properly refused, because the instruction ignored the fact that Kinnaird, in his answer, based his refusal to deliver the lumber upon the wholly inconsistent idea that he had the right to discontinue the contract at his pleasure, and that he did so. His theory of the case being that he annulled the contract under a right to do so, it follows that he broke the contract, if the right to annul it, did not exist. It was claimed for the first time in the answer, that appellee had not taken the lumber as fast as it was tendered; and, there was no proof to sustain the charge so made.

Instruction B offered by the appellant, presented the issue of the omission in the contract; but as that issue was presented by instruction No. 1, instruction B was unnecessary.

Instruction C, offered by the appellant, proposed to credit the $1,000.00 advancement by the value of the 30,779 feet of lumber delivered under the first inspection. This instruction, however, totally ignored the contract price at which the lumber had been sold, and, for that reason, was properly refused.

Instruction D, offered by the appellant, proposed to direct the jury to find for Kinnaird on his counter-claim in a sum not exceeding $1,500.00, in case they should believe from the evidence that the plaintiff failed to inspect, measure and pay for the lumber after having been notified by Kinnaird that he was ready to deliver said lumber. This instruction, however, wholly ignores the pleadings and the proof, since Kinnaird nowhere claims or shows that he was ready to deliver the lumber to appellee, after the delivery of the first inspection; on the contrary, he based his entire defense, as above pointed out, upon the fact that he abrogated the contract because he had the right to do so, under his view of it.

Upon the whole case, we think the issues between the parties were fairly presented by the instructions given, and that the verdict is sustained by the evidence.

Judgment affirmed.